## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **LOVELL GRIFFIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 1:06-0327** |
| ) | |
| **JIM RUBENSTEIN,** ) | |
| **Commissioner,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss (Document No. 24.), filed on April 20, 2009. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by Defendants in moving to dismiss. (Document No. 26.) Plaintiff has not filed a response to Defendants' Motion. Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant the Defendants' Motion to Dismiss.

### FACTUAL AND PROCEDURAL HISTORY

On May 5, 2006, Plaintiff, acting *pro se* and in confinement at Huttonsville Correctional Center[1] in Huttonsville, West Virginia, filed his Complaint in this matter claiming entitlement to monetary damages under 42 U.S.C. §1983.[2] (Document No. 2.) Plaintiff named the following as

---

[1] The West Virginia Division of Corrections' Inmate Locator indicates that Plaintiff is located at Charleston Work Release.

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

defendants: (1) Jim Rubenstein, Commissioner; (2) Bobby Hamricks, Medical Administrator; (3) Bluefield Regional Medical Center; (4) Steven O'Saile, M.D., Bluefield Regional Medical Center; (5) Joseph Hall, Parole Officer; (6) the Chief Parole Officer of Princeton and Beckley, West Virginia; and (7) William Hanies, Warden at Huttonsville Correctional Center. By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 6.)

Plaintiff alleges that he went to the Bluefield Regional Medical Center on October 19, 2005, due to an injury he received to his left leg. (Id., p. 5.) The emergency room doctors determined that Plaintiff had a compound fracture and Dr. O'Saile, a bone specialist, was called in to treat Plaintiff. (Id.) Plaintiff was treated by Dr. O'Saile at Bluefield Regional Medical Center until his release on October 25, 2005. (Id.) Before Plaintiff left Bluefield Regional Medical Center on October 25, 2005, he was approached by City of Bluefield Police Officers, who informed Plaintiff that he was under arrest for a parole violation. (Id.) Plaintiff alleges that Parole Officer Hall "made a false and malicious statement and report on me," which resulted in his arrest. (Id.) Plaintiff was subsequently incarcerated at the Southern Regional Jail [SRJ]. (Id.) On November 6, 2005, SRJ transported Plaintiff back to Dr. O'Saile's office for a follow-up appointment and x-rays were taken of Plaintiff's leg. (Id.) Plaintiff was again transported to Dr. O'Saile's office in December, 2005, for a follow-up appointment and x-rays. (Id.) On January 2, 2006, Dr. O'Saile removed the braces and pins from Plaintiff's leg and faxed physical therapy instructions to SRJ. (Id.) On January 27, 2006, Plaintiff was transported to Huttonsville Correctional Center [HCC]. (Id.) Plaintiff contends that he suffered "pain and emotional distress" during his transportation to HCC. (Id.) On February 8, 2006, Plaintiff was examined by the acting doctor at HCC. (Id.) Plaintiff alleges that the doctor stated that his "leg was in pretty bad shape

and that I might lose it and then he recommended that I be seen by a bone specialist immediately." (Id., pp. 5-6.) Plaintiff states that Defendant Hamricks, the Medical Administrator of HCC, acted with deliberate indifference concerning Plaintiff's serious medical condition by refusing to timely schedule Plaintiff an appointment with a specialist. (Id.) Plaintiff alleges that after filing G-1 grievances on March 2 and 21, 2006, Defendant Hamricks referred Plaintiff to a specialist. (Id., p. 6.) In late March, 2006, Plaintiff was examined by Dr. Joseph Snead, an orthopedic surgeon, who informed Plaintiff that the doctor who performed Plaintiff's surgery "could have left the braces on for 10 years and the leg would never have healed because the bone is shattered." (Id.) Dr. Snead allegedly contacted Dr. Proter and Defendant Hamrick on March 26, 2006, informing them that Plaintiff needed immediate surgery. (Id.) As of the date of Plaintiff's Complaint, he alleges he was suffering extreme pain and was in the immediate need of surgery. (Id.) Plaintiff seeks compensatory and punitive damages. (Id., p. 8.)

By Order entered on March 26, 2009, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and required the Clerk to issue process pursuant to Rule 4 of the Federal Rules of Civil Procedure upon Defendants Rubenstein, Hamricks, and Hanies. (Document No. 13.) The undersigned also entered a Proposed Findings and Recommendation on March 26, 2009, recommending that (1) Plaintiff's complaint be dismissed for failure to state a claim as to Defendants Bluefield Regional Medical Center, Dr. O'Saile, Hall, and the Chief Parole Officer of Princeton and Beckley, West Virginia, and (2) the matter be refer back to the undersigned for further proceedings regarding Plaintiff's Eight Amendment claim against Defendants Rubenstein, Hamricks, and Haines. (Document No. 14.)

On April 20, 2009, Defendants Rubenstein and Hanies, by counsel, filed a Motion to Dismiss with Memorandum in Support. (Document Nos. 24 and 25.) Defendants contend that Plaintiff's Complaint must be dismissed based upon the following: (1) "Mr. Griffin failed to plead facts

sufficient to give rise to a finding that these Defendants were deliberately indifferent to his medical needs;" (2) "Defendants are entitled to qualified immunity;" and (3) "Mr. Griffin failed to exhaust administrative remedies." (Document No. 24.) On April 21, 2009, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the Defendants' Motion to Dismiss.[3] (Document No. 24.) Plaintiff did not file a response. On June 1, 2009, Defendants' filed their "Reply to Mr. Griffin's Lack of Response to their Motion to Dismiss." (Document No. 27.) Specifically, Defendants requested that the Court "enter an Order granting their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because (1) Mr. Griffin failed to plead facts sufficient to give rise to a finding that these Defendants were deliberately indifferent to his medical needs, (2) these Defendants are entitled to qualified immunity, and (3) Mr. Griffin failed to exhaust administrative remedies." (Id.) By Memorandum Opinion and Order entered on June 8, 2009 (Document No. 24.), the District Court adopted the undersigned's Proposed Findings and Recommendations and remanded this matter back to the undersigned for further proceedings.

## THE STANDARD

**Motion to Dismiss**

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corporation v. Twombly,

---

[3] Based on a review of the docket sheet, it appears that Plaintiff updated his contact information by contacting the Clerk's Office on April 21, 2009.

550 U.S. 544, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Dismissal is proper under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## ANALYSIS

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] Woodford v. Ngo, 548 U.S. 81, 84 - 86, 126 S.Ct. 2378, 2382 - 2383, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on*

6

*other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)).

      The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment. Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. The Unit Manager must respond to the inmate's Grievance within five business days. If the Unit Manager's response was unfavorable,

the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. The Warden/Administrator must respond to the appeal, in writing, within five working days. If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. If the Warden/Administrator's response was unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. The Commissioner must respond to the appeal within ten working days. The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. The entire process takes about 60 days to complete.

From the record available to the Court, it appears that Plaintiff filed his Complaint without first exhausting his administrative remedies pursuant to the PLRA. Plaintiff filed three grievances alleging inadequate medical care concerning his leg: (1) a G-1 filed on March 2, 2006; (2) a G-1 filed on March 21, 2006; and (2) a G-2 filed on March 29, 2006. (Document No. 25, p. 2.) In response to the above grievances, Plaintiff was informed that an appointment was being arranged with West Virginia University Hospital.[5] Plaintiff, however, did not appeal the denial of his G-2 grievance. According to the West Virginia Division of Corrections' grievance procedure, an inmate must appeal any unfavorable decision by the Warden/Administrator to the Commissioner/designee of the Division of Corrections by filing a G-3 grievance. Defendants state that Plaintiff "never submitted a G-3 grievance to the Commissioner" and "has not voiced complaints to these Defendants since March, 2006."[6] (Document No. 25, pp. 2 and 5.) Plaintiff does not dispute that he failed to exhaust his administrative

---

[5] Plaintiff acknowledges that an appointment with a specialist was scheduled following the filings of his G-1 grievances.

[6] Defendants state that Plaintiff "received extensive and continuing care until it was determined that surgery was required to correct the break in his leg. He ultimately received that elective surgery on September 8, 2006." (Document No. 25, p. 2.)

remedies.[7] Additionally, there is no allegation that Plaintiff was prevented from properly exhausting his administrative remedies. For these reasons, Defendants' Motion to Dismiss must be granted. Having concluded that this action must be dismissed because Plaintiff failed to exhaust administrative remedies, the undersigned finds it unnecessary to consider the other reasons which the Defendants submit for dismissal.[8]

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Motions to Dismiss (Document No. 24.), **DISMISS** Plaintiff's Complaint (Document No. 2.) and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby

---

[7] Although Plaintiff indicates in his Complaint that he exhausted his administrative remedies, Plaintiff does not dispute Defendants' claim that Plaintiff did not file a G-3 grievance.

[8] Even assuming Plaintiff properly exhausted his administrative remedies, the undersigned finds that Plaintiff has failed to state a claim of deliberate indifference. In view of Plaintiff's allegations, the undersigned assumes that Plaintiff's medical conditions are objectively serious. Respecting the second prong of the standard, it is clear that Plaintiff cannot establish that Defendants were deliberately indifferent to Plaintiff's serious medical needs. In February, 2006, Plaintiff was evaluated by a physician at HCC upon complaining of pain following the removal of the pins from his leg by the Bluefield Regional Medical Center. In response to Plaintiff's continuing complaints of pain, Plaintiff was referred to a specialist and received continuing care until it was determined that surgery was necessary. Plaintiff's "elective surgery" was performed on September 8, 2006. The undersigned, therefore, finds that Defendants sufficiently treated Plaintiff's medical condition. If anything, Plaintiff simply disagrees with the appropriate course of treatment. An inmate's disagreement with his medical care or his course of treatment for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Reading Plaintiff's documents liberally as required and considering facts as alleged and which might be implied therein, the undersigned finds that they cannot be read to allege indifference to his serious medical needs in violation of the Eighth Amendment of the United States Constitution. Accordingly, it appears beyond doubt that Plaintiff can prove no set of facts in support of the requisite second prong of his Eighth Amendment claim that he has received inadequate medical treatment.

**FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

Date: June 25, 2009.

R. Clarke VanDervort
United States Magistrate Judge